946 F.2d 886
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard D. SNIDER; Snider Seafoods, Inc., Plaintiffs-Appellees,
and
South Atlantic Production Credit Association, Plaintiff,
v.
MANAGEMENT RECIPROCAL INSURERS, Defendant-Appellant,
and
Pacific International Insurance Company; Knightsbridge
Insurance Company Limited; Savoy Reinsurance
Company, Ltd., Defendants.
 No. 88-1394.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1989.
Decided Oct. 21, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. C. Weston Houck, District Judge. (CA-88-1011-2-2)
 Argued: Morris Dawes Cooke, Jr., Barnwell, Whaley, Patterson & Helms, Charleston, S.C., for appellant; Robert Randall Bridwell, Cooper & Raley, Charleston, S.C., for appellee.
 On Brief: John Hughes Cooper, Cooper & Raley, Charleston, S.C., for appellee.
 D.S.C.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before K.K. HALL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Snider Seafoods sued Nautical Management Reciprocal Insurers (Nautical) in diversity jurisdiction for payment on a shrimp boat hull policy. A jury found Nautical liable for bad faith refusal to pay insurance benefits and awarded Snider Seafoods actual and punitive damages. Nautical appeals the punitive damages award, arguing that the evidence does not support the award and that the award violates the Due Process Clause. We held this appeal, awaiting the Supreme Court's decision in Pacific Mut. Life Ins. Co. v. Haslip, 111 S.Ct. 1032 (1991). Although substantial evidence supports the issue of liability for punitive damages, we remand for retrial on the sole issue of the amount of punitive damages.
 
 
 2
 * On December 29, 1987, a shrimp boat, the F/V Pamela J, ran aground on a sandbar off the coast of South Carolina. Richard Snider, the captain of the boat and owner of Snider Seafoods, called the United States Coast Guard for assistance and backed off the sandbar. The grounding caused leaks in the hull of the F/V Pamela J, and on its way to rendezvous with a Coast Guard patrol, the boat began sinking. The Coast Guard rescued Snider before the boat sank. The Coast Guard report concluded that Snider did not intentionally cause the casualty.
 
 
 3
 Nautical, which had issued a hull policy of $200,000 for the F/V Pamela J, promptly dispatched a marine casualty adjustor to Charleston, South Carolina, to investigate the loss. The adjustor, Patrick McLendon, evaluated the Coast Guard reports and photographs of the incident and interviewed the captain and crew of the F/V Pamela J. In a report dated January 14, 1988, McLendon concluded that Nautical should declare the F/V Pamela J a total loss and should pay Snider Seafoods' claim.
 
 
 4
 Nautical then instructed Greg Baker to take over investigation of the claim. Baker was not a licensed marine casualty adjustor and, in fact, had no experience in marine casualty investigation. Baker did not interview the captain or crew of the ship. However, based on his review of McLendon's report, the Coast Guard report and tide flow and navigational charts, Baker recommended denial of the claim on the grounds that Snider intentionally sank the F/V Pamela J. By a letter dated April 11, 1988, Nautical informed Snider Seafoods that Nautical had elected to deny the claim.
 
 
 5
 Snider Seafoods filed suit against Nautical on April 19, 1988, alleging breach of contract and bad faith refusal to pay insurance benefits, in violation of South Carolina law. Just before trial, Nautical agreed to pay the amount of the insurance policy ($200,000) by September 12, 1988, and Snider Seafoods voluntarily dismissed the breach of contract claim. The jury found Nautical liable on the bad faith claim and awarded Snider Seafoods $40,000 in actual damages and $250,000 in punitive damages. Upon the motion of Snider Seafoods, and with the consent of Nautical, the district court reduced the actual damages award to the amount proved at trial, $15,360.55. With respect to the punitive damages award, Nautical moved for judgment notwithstanding the verdict and for a new trial. The district court denied the motions, and this appeal followed.
 
 II
 
 6
 South Carolina permits a common law cause of action for bad faith refusal to pay first party insurance benefits. If the policyholder can demonstrate that the insurer acted willfully or in reckless disregard of his rights, he can recover punitive damages. Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616, 618-19 (S.C.1983). This standard provides adequate guidance to a jury on the question of liability for punitive damages.
 
 
 7
 Nautical argues that the evidence does not support a finding that the company acted willfully or in reckless disregard of Snider Seafoods' rights.
 
 
 8
 Faced with the Coast Guard's and McLendon's reports absolving Snider of responsibility for the casualty, Nautical nevertheless elected to deny Snider Seafoods' claim on the basis of Baker's report, despite his lack of qualifications and the inadequacy of his investigation. We find that sufficient evidence supports the jury's decision to award punitive damages in accordance with South Carolina law, which the district court properly explained to the jury.
 
 
 9
 In Mattison v. Dallas Carrier Corp., --- F.2d ---- (4th Cir.1991), we held:
 
 
 10
 South Carolina law for awarding punitive damages, applied by the district court whose jurisdiction was based on diversity of citizenship, denied the defendant due process in violation of the Fifth Amendment, because its lack of meaningful standards allowed the jury to exercise unconstrained discretion in making its awards.
 
 
 11
 --- F.2d at ----.
 
 
 12
 We vacate that portion of the judgment awarding punitive damages and remand the case for retrial on the issue of the amount of punitive damages in accordance with the directions outlined in Mattison. We affirm those portions of the judgment awarding compensatory damages and finding liability for punitive damages.
 
 
 13
 In accordance with the order entered October 10, 1991, the clerk is directed to stay the issuance of the mandate until further order of the court.
 
 
 14
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.