761 So.2d 1000 (2000)
Ex parte STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
(Re Billy Smith v. State Farm Mutual Automobile Insurance Company).
1980982.
Supreme Court of Alabama.
March 3, 2000.
*1001 T. Randall Lyons of Nix, Hotsford & Vercelli, P.C., Montgomery, for petitioner.
Kenneth J. Mendelsohn and Thomas E. James of Jemison & Mendelsohn, P.C., Montgomery, for respondent.
JOHNSTONE, Justice.
State Farm Mutual Automobile Insurance Company is a defendant in an action filed in the Montgomery County Circuit Court by its insured Billy Smith. State Farm petitions for a writ of mandamus directing Judge Tracy McCooey to vacate her order compelling State Farm to produce any and all documents in its claims file that were made in the ordinary course of business before State Farm was sued. We deny that petition.
On May 2, 1997, the vehicles driven by Billy Smith and Andrew Sullivan collided. As a result of the collision, Smith sustained a neck injury that necessitated surgery and caused him lost wages and pain and suffering. Smith made a claim against Sullivan's automobile insurance company. *1002 In April 1998, Sullivan's insurance company tendered to Smith $25,000, the policy limits. State Farm approved the settlement. Smith then made a claim under his automobile insurance policy for underinsured motorist benefits. State Farm denied Smith's claim.
On August 6, 1998, Smith filed a breach of contract action against State Farm. Smith also filed a request for production. He requested that State Farm produce, among other things, "[a] copy of the claim[s] file." State Farm objected to the request. State Farm specifically stated, "The claims file is privileged; it is the subject of work product, attorney-client privilege, as well as documents prepared in anticipation of litigation." Pursuant to Ex parte Fuller, 600 So.2d 214 (Ala.1992), Smith moved to compel production of documents in the claims file that were not generated in anticipation of litigation. State Farm responded and asserted that all documents were prepared in anticipation of litigation because 12 days after the accident Smith obtained counsel. In support of its response, State Farm produced an affidavit from the State Farm employee handling the claims file.
Thereafter, the trial court entered an order stating, in pertinent part, as follows:
"On March 3, 1999, [State Farm] filed a response objecting to producing the claims file arguing that the documents were prepared in anticipation of litigation. In Ex parte Fuller, 600 So.2d 214 (Ala.1992), the Supreme Court of Alabama concluded that any materials that were not prepared in anticipation of litigation were in fact discoverable. The Court went on to state that the party objecting to discovery bears the burden of establishing the elements of the work product exception.
"[Smith] has stated in his motion that he is seeking only documents that were prepared before State Farm was sued. Wherefore, the Court orders that [State Farm] will turn over any and all documents in the claims file that were made in the ordinary course of business prior to State Farm being sued. [State Farm] is ordered to comply within 10 days of this order."
State Farm then filed this petition for a writ of mandamus.
"A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998).
Mandamus is the appropriate method of review of discovery orders. Ex parte Bozeman, 420 So.2d 89 (Ala.1982). The use of a writ of a mandamus to compel or to prohibit discovery is restricted because of the discretionary nature of a discovery order. Id. See also Ex parte Bean, 703 So.2d 329 (Ala.1997).
"Under Rule 26(b)(3), the party objecting to discovery bears the burden of establishing the elements of the work-production exception." Ex parte Garrick, 642 So.2d 951 (Ala.1994). The mere fact that litigation does eventually ensue does not, by itself, cloak materials with the protection of the work-product privilege. Sims v. Knollwood Park Hosp., 511 So.2d 154 (Ala.1987). "`[T]he test should be whether, in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Sims, 511 So.2d at 157 (quoting Binks Mfg. Co. v. National Presto Industries, Inc., 709 F.2d 1109, 1119 (7th Cir.1983)). The word (and concept) because is critical. Justice Lyons's scholarly special concurrence correctly explains it.
An evidentiary showing by the objecting party is not required until the parties are "at issue as to whether the *1003 document sought was, in fact, prepared in anticipation of litigation." Ex parte Garrick, 642 So.2d at 953. The parties are at issue if the party requesting the document files a motion to compel. Id. See also Rule 34(b), Ala. R. Civ. P.
Once Smith filed a motion to compel the production of the documents, he and State Farm were at issue whether the documents in the claims file, prepared before State Farm was sued, were, in fact, prepared in anticipation of litigation. Ex parte Garrick. Therefore, the burden shifted to State Farm to establish that the requested documents were generated in anticipation of litigation.
In support of its claim of privilege, State Farm submitted an affidavit of the State Farm claims representative responsible for handling Smith's claim. The claims representative states, in pertinent part, as follows:
"I am responsible, at the present time, for handling the claim and lawsuit filed by Billy J. Smith regarding an accident which occurred on May 2, 1997.
"I have personal knowledge of the facts making the basis of this Affidavit, and I am over the age of nineteen.
"In reviewing the claims file, which is a part of the State Farm record on the claim and lawsuit filed by Billy J. Smith, I submit the following in my affidavit regarding the Plaintiff's Motion to Compel discovery of the claims file in question.
"1. The accident making the basis of this claim occurred on May 2, 1997.
"2. The claims file in question was set up May 5, 1997.
"3. On May 7, 1997, a coverage request was made, and the insured was found to be outside his coverage. At that time, a claims representative spoke with Mr. Smith telling him his policy had lapsed, and he then paid his premium to bring his policy current and to allow coverage to continue.
"4. On May 9, 1997, the policy was confirmed to have coverage. At that time, letters were sent to Mr. Smith regarding rental insurance and medical payments coverage. Copies of these letters are attached as a portion of the claims file.
"5. Thereafter, on May 14, 1997, the claims file was updated to show that the insured, Billy J. Smith, had obtained an attorney.... From that point on, State Farm was under the impression and took the position that Mr. Smith planned to be involved in litigation regarding this accident, and the rest of any documentation from the claims file was made in anticipation of litigation."
"The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an `in house' report as work product." Sims, 511 So.2d at 158 (quoting Janicker v. George Washington Univ., 94 F.R.D. 648, 650 (D.D.C.1982)). The affidavit does not assert that the requested documents were prepared because of the prospect of litigation against State Farm, nor did State Farm offer any other evidence showing that the requested documents were prepared because of the prospect of litigation against State Farm.
State Farm's claim of privilegeanticipation of litigationis based upon the facts that Smith obtained an attorney and that State Farm took the position that Smith planned to be involved in litigation. State Farm did not present any evidence that in May 1997 Smith planned to be involved in litigation with State Farm. Likewise, State Farm did not present any evidence that in May 1997 Smith made a claim for underinsured motorist benefits or informed State Farm that he intended to make a claim for underinsured motorist benefits.
State Farm has not carried its burden of showing that it prepared the requested documents because of the prospect of litigation against it. Therefore, the trial court properly ordered production of an *1004 appropriately limited category of documents in the claims file. Consequently, because we hold the trial court properly granted Smith's limited request for production of the claims file, this case presents no abuse of discretion. Accordingly, State Farm is without a clear legal right to the order sought. Thus, State Farm is not entitled to a writ of mandamus.
WRIT DENIED.
COOK, BROWN, and ENGLAND, JJ., concur.
HOUSTON and LYONS, JJ., concur specially.
MADDOX and SEE, JJ., concur in the result.
HOOPER, C.J., dissents.
LYONS, Justice (concurring specially).
I agree that State Farm failed to carry its burden of establishing that its claims file was prepared in "anticipation of litigation" from the moment it learned its insured had retained counsel. Where an insurer has a separate and independent contractual duty to investigate a claim, the insurer must satisfy the requirements of Rule 26(b)(3), Ala. R. Civ. P., by showing more than simply when a document was prepared. The insurer claiming a work-product privilege must show why each document was prepared and how it was used. See Harper v. Auto-Owners Insurance Co., 138 F.R.D. 655, 670 (S.D.Ind.1991), criticizing Carver v. Allstate Insurance Co., 94 F.R.D. 131 (S.D.Ga.1982), for its focus on a pivotal moment when the insurer's activity shifted from claims evaluation to preparation for litigation because that focus overlooks the requirement of Rule 26(b)(3) of a causal relationship between the impending litigation and the production or use of the documents.
HOUSTON, J., concurs.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent. Michelle Gantt, a claims specialist for the defendant State Farm Mutual Automobile Insurance Company, stated in her March 2, 1999, affidavit that she was responsible for handling the claim and the lawsuit filed by Billy J. Smith regarding his accident that occurred on May 2, 1997. She also stated the following:
"1. The accident making the basis of this claim occurred on May 2, 1997.
"2. The claims file in question was set up on May 5, 1997.
"3. On May 7, 1997, a coverage request was made, and the insured was found to be outside of his coverage. At that time, a claims representative spoke with Mr. Smith telling him his policy had lapsed, and he then paid his premium to bring his policy current and to allow coverage to continue.
"4. On May 9, 1997, the policy was confirmed to have coverage. At that time, letters were sent to Mr. Smith regarding rental insurance and medical payments coverage. Copies of these letters are attached as a portion of the claims file.
"5. Thereafter, on May 14, 1997, the claims file was updated to show that the insured, Billy J. Smith, had obtained an attorney, Maurice Bell. From that point on, State Farm was under the impression and took the position that Mr. Smith planned to be involved in litigation regarding this accident, and the rest of any documentation from the claims file was made in anticipation of litigation."
Normally, in the situation of an insured making a claim for uninsured- or underinsured-motorist coverage, the insured and the insurer are in an adversarial relationship.[1] State Farm has not withheld any of *1005 the claims file prepared before May 14, 1997, the date Smith hired an attorney. For what purpose does one hire an attorney? To litigate. It was common sense for Gantt to assume that all her work on the claims file from then on was done in anticipation of litigation.
This Court, in Ex parte Bozeman, 420 So.2d 89 (Ala.1982), ruled in favor of the insurer based on just such evidence as was present in this case, an affidavit prepared by the claims specialist. In Bozeman, the plaintiffs' home was damaged by blasting near their house; they filed a claim with their insurer, State Farm Fire and Casualty Company. State Farm offered no payment on that claim. The plaintiffs sued State Farm, alleging a bad-faith refusal to pay on the claim they had made pursuant to their homeowner's policy. The plaintiffs sought discovery from State Farm of three documents, two that were prepared after State Farm had learned that the plaintiffs had retained an attorney and one that was prepared after their action had been filed. The trial court denied the plaintiffs' motion to compel State Farm's production of the three documents. The plaintiffs petitioned this Court for a writ of mandamus compelling the discovery. This Court wrote:
"Although we have meager evidence in the record before us, we are able to conclude that the trial court could find that the requested documents were, in fact, prepared in anticipation of litigation."
420 So.2d at 90.
In Ex parte State Farm Mutual Automobile Insurance Co., 386 So.2d 1133 (Ala. 1980), this Court stated:
"In this case, State Farm's claims specialist testified, by affidavit, that from the very outset of his investigation, it was obvious to him that State Farm's insured was free from liability, and that he prepared all of the documents for eventual litigation."
386 So.2d at 1136. The State Farm claims specialist had a rational basis for determining that litigation was a real possibility as of May 14, 1997. Strangely enough, Smith later sued State Farm. Gantt was accurate in her assessment of the claim. Smith did intend to litigate, and, strangely enough, he intended to have an attorney handle that litigation. I certainly would not advocate a rule by which a court concludes that whenever an insured commences litigation, the insured's claims file is considered to have been prepared in anticipation of litigation. But in the case of an adversarial relationship between the insured and the insurer, and when the insured hires an attorney, it is reasonable to believe that litigation will come. Unless the insurer makes a decision that is unreasonable or that is based on nothing that would lead a person experienced in handling claims of this nature to believe that litigation is anticipated, an affidavit like the one in this case evidencing a decision to prepare the file in anticipation of litigation should be accepted as sufficient to support such a defense to discovery.
The main opinion cites no Alabama precedent for its assertion that State Farm provided insufficient evidence to support its position. It cites a case from the United States District Court for the District of Columbia.[2] After quoting directly from the affidavit, the majority is even so bold as to state that Gantt's affidavit "does not assert that the requested documents were prepared because of the prospect of litigation against State Farm." 761 So.2d at 1003. Yet, Gantt said in that affidavit (I quote here from the main opinion's quote of that document): "From that point on [May 14, 1997, the date Smith hired an *1006 attorney], State Farm was under the impression and took the position that Mr. Smith planned to be involved in litigation regarding this accident, and the rest of any documentation from the claims file was made in anticipation of litigation." 761 So.2d at 1003. The main opinion would require State Farm to add the words "against State Farm" in order to provide sufficient evidence. Attorney work product is attorney work product, no matter who is the target of litigation involving insurance coverage.
I dissent because in this case and others like it, the insurer must wait until a lawsuit is filed to establish a date at which anything in the claims file will be considered attorney work product. I do not consider the experienced predictive powers of insurance companies, which are constantly being sued by insureds, to be that poor. Therefore, I respectfully dissent.
NOTES
[1] "Usually uninsured and underinsured motorist coverage gives the insurer a contract right to be in an adversarial position to the insured, for the insurer (1) can be joined as a defendant by the insured (subject to the insurer's right to elect not to participate in the trial but to be bound by the factfinder's decisions on issues of liability and damages) or (2) can intervene as a party adverse to its insured." Ex parte Fuller, 600 So.2d 214, 216 (Ala.1992) (Houston, J., dissenting).
[2] Janicker v. George Washington Univ., 94 F.R.D. 648, 650 (D.D.C.1982).